UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

VICTOR MARRERO-PEREZ     Plaintiff

v.     Civil Action No. 3:21-cv-645-RGJ

YANFENG US AUTOMOTIVE INTERIOR     Defendant
SYSTEMS II LLC

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Yanfeng US Automotive Interior Systems II LLC ("Yanfeng") moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). [DE 5]. Plaintiff Victor Marrero-Perez ("Marrero") responded [DE 13] and Yanfeng replied [DE 16]. This matter is ripe. For the reasons below, the Court will **GRANT** in part and **DENY** in part Yanfeng's Motion to Dismiss [DE 5].

### I.     BACKGROUND

Marrero started working first shift at Yanfeng on May 5, 2007, as an injection molding operator. [DE 1-1 at 8]. In 2015, Marrero was diagnosed with colon cancer and applied for leave under the Family Medical Leave Act ("FMLA"). [*Id.*]. He also requested and was granted FMLA leave to tend to his ailing mother. [*Id.*]. Despite recommendations from two doctors that Marrero remain on first shift, Marrero was moved to second shift after his cancer-related operation. [*Id.* at 8–9]. Marrero, who is Cuban [*id.* at 12], alleges that the person who replaced him on the first shift was a younger female employee [*Id.* at 9]. Because he was working second shift, Marrero frequently had to leave work early due to complications from his surgery and ongoing chemotherapy. [*Id.*]. Leaving work early would trigger Marrero's FMLA hours that he alleges would not have been taken if given the proper accommodation. [*Id.*]. Marrero further alleges that

1

his FMLA hours were overcharged and he was, on nine separate occasions, double charged for vacation time and FMLA time.

Between February 1, and April 11, 2017, Marrero was warned about his attendance four times. [*Id.* at 10]. Marrero filed grievances regarding his FMLA leave and Yanfeng's failure to accommodate with the union that represented him and directly with Yanfeng. [*Id.*]. Marrero was terminated from Yanfeng on April 27, 2018. [*Id.* at 11].

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). As stated, when considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. ANALYSIS

Yanfeng seeks to dismiss all seven counts in Marrero's Complaint. [DE 5]. First, Yanfeng argues that Marrero's state law claims (Counts I, II, IV, V, and VII) are preempted by § 301 of the Labor Relations Management Act ("LMRA"), or, in the alternative, must fail on their own merits. [*Id.* at 32–37]. Yanfeng also argues that Marrero's claim (Count III) under the Americans with Disabilities Act ("ADA") fails to meet certain viability requirements. [*Id.* at 37]. Finally, Yanfeng contends that Marrero's FMLA claim (Count VI) is time-barred. [*Id.* at 38]. In response, Marrero asserts that his state law claims are not preempted by the LMRA and survive on their own merits. [DE 13 at 86–92]. Marrero also contends that he has established a prima facie case under the ADA. [*Id.* at 92]. Marrero does not address his FMLA claim.

#### A. Preemption Under the LMRA

Yanfeng alleges that Marrero's state law claims (Counts I, II, IV, V, and VII) are preempted by the LMRA. [DE 5 at 32]. In response, Marrero contends generally that the Court need not consider the Collective Bargaining Agreement [DE 5-1, the ("CBA")] to rule on his claims. [DE 13 at 86].

As a threshold matter, the Court must determine whether it can consider the CBA without converting Yanfeng's Motion to Dismiss into a motion for summary judgment. Exhibits attached to a motion to dismiss may be considered by the Court "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic*

3

*Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citations omitted). Courts in the Sixth Circuit have considered collective bargaining agreements attached to motions to dismiss. *See, e.g.*, *Grose v. American Airlines, Inc.*, 20-CV-02754-JTF-TMP, 2021 WL 1876152, at *4 (W.D. Tenn. Mar. 5, 2021), report and recommendation adopted, 220CV02754JTFTMP, 2021 WL 1714245 (W.D. Tenn. Apr. 30, 2021); *Howard v. Post Foods, LLC*, 1:19-CV-570, 2021 WL 194036, at *3 (W.D. Mich. Jan. 20, 2021). Marrero alleges that he filed grievances with his union, which could only be done pursuant to a collective bargaining agreement. [DE 1-1 at 10]. Therefore, the Court will consider the CBA without converting Yanfeng's Motion to Dismiss into a motion for summary judgment. *See Bassett*, 528 F.3d at 430.

Yanfeng alleges that the CBA preempts Marrero's state law claims [DE 5 at 32]. To determine whether preemption applies under § 301 of the LMRA, the Sixth Circuit applies the following test:

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the labor contract. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the labor contract, or instead by state law. If the rights were created by the labor contract, the claim is preempted. In short, if the state-law claim fails either of these two requirements, it is preempted by § 301.

*See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012) (brackets and citations omitted). However, where the CBA would only provide "relevant background," preemption will not apply. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209–10 (6th Cir. 2004). "[N]either a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). In characterizing the Complaint, the Court must "bear in mind that plaintiff is master of her complaint," and the defendant bears the burden of proving preemption. *Paul*, 701 F.3d at 522.

Marrero asserts five causes of action under state law: discrimination based on national origin, age discrimination, retaliation, wrongful discharge, and constructive discharge. [DE 1-1]. Yanfeng alleges that adverse actions pled by Marrero, including his move to second shift and his discharge from employment, all require interpretation of rights guaranteed under the CBA. [DE 5 at 33–34]. Although the CBA does provide procedures for handling grievances, seniority, and leaves of absence, the Complaint does rely on rights specified in the CBA. [DE 5-1 at 45, 51, 53]. The Complaint never cites the CBA but relies on state law causes of action. [DE 1-1]. Making all reasonable inferences in favor of Marrero, his state law claims can likely be proven without interpreting the terms of the CBA.

Yanfeng cites the Court's opinion in *Walden v. General Electric Int'l, Inc.*, No. 4:19-CV-00159-JHM, 2020 WL 1676803 (W.D. Ky. Apr. 6, 2020) to support its position that interpretation of the CBA is necessary. [DE 5 at 34]. Yet *Walden* is distinguishable. Walden sued his employer for age discrimination under state law because he failed to receive a promotion. 2020 WL 1676803, at *3. Walden argued that a collective bargaining agreement provided that he was the most senior applicant and was required to receive the position. *See id.* The Court held that Walden's claim was preempted by the LMRA because it required interpretation of a collective bargaining agreement and was not based merely on a violation of his rights under the statute. *See id.* Unlike *Walden*, Marrero has not cited the CBA or claimed a violation of his rights under the CBA. [DE 1-1]. Instead, Marrero strictly relies on his rights guaranteed under state law. [*Id.*]. Yanfeng may rely on provisions of the CBA as defenses to Marrero's claims but doing so does not provide a sufficient basis for preemption. *See DeCoe*, 32 F.3d at 216. Accordingly, Marrero's state law claims survive the first part of the Sixth Circuit's test because his claims do not require interpretation of the CBA. *Paul*, 701 F.3d at 519.

Yanfeng also asserts that Marrero's state law claims fail the second part of the Sixth Circuit's test because the rights claimed by Marrero were created by the CBA. [DE 5 at 33]. However, the Marrero is the master of his Complaint. *See Paul*, 701 F.3d at 522. Again, Marrero has not cited the CBA or relied on its provisions for any of his five state law claims. [DE 1-1]. The Sixth Circuit has similarly held that a plaintiff's state law claims are independent of a collective bargaining agreement where the complaint does not refer to rights under the CBA or a need to interpret its terms. *See Paul*, 701 F.3d at 522. Here, as in *Paul*, Marrero has asserted rights exclusively under state law. *See id.* at 520. Although there are grievance procedures in the CBA [DE 5-1 at 45], Marrero has not decided to pursue those remedies here. [DE 1-1]. As a result, the Court finds that the rights asserted in the Complaint arise under state law, not the CBA. The CBA may provide relevant background because of the employment relationship between Marrero and Yanfeng but this is not enough to establish preemption. *See Harper*, 392 F.3d at 209–10. Because Marrero's claims survive both factors of the LMRA preemption analysis, Yanfeng has failed to carry its burden to prove Marrero's state law claims are preempted. *Paul*, 701 F.3d at 522.

**B. Claims Arising Under Kentucky Law**

Yanfeng argues that Marrero's state law claims should be dismissed for other "dispositive flaws." [DE 5 at 34]. Marrero claims that his state law claims should not be dismissed. [DE 13 at 87]. The Court will address the claims in the order addressed by the parties.

*i. National Origin Discrimination (Count I)*

Yanfeng argues that Marrero failed to plead anything more than conclusory allegations. [DE 5 at 35]. The Kentucky Civil Rights Act ("KCRA") makes it unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because

6

of the individual's . . . national origin." KRS 344.040(1)(a). It is also unlawful for an employer to "limit, segregate, or classify employees in any way which would deprive or tend to deprive an individual employment opportunity or otherwise adversely affect [his] status as an employee, because of the individual's national origin." *Id.* at 344.040(1)(b). To establish a prima facie case for national origin discrimination, a plaintiff must show he: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which he was discharged, and (4) was replaced by a person outside the protected class." *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 577 (Ky. 2016).

Marrero's alleges that he is a political refugee from Cuba, which would place him in a protected class. [DE 1-1 at 12]. He also alleges that he was discharged from employment. [*Id.*]. As evidence of his qualifications, Marrero explains that he worked in his position for ten years without a negative performance review. [*Id.*]. Marrero finally alleges that his replacement was outside of his protected class. [*Id.*]. Accepting Marrero's allegations as true and making all reasonable inferences in his favor, see *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434, the Court finds that Marrero has stated a claim for national origin discrimination under the KCRA. Accordingly, Yanfeng's Motion to Dismiss [DE 5] is **DENIED** as to Count I.

    *ii.  Age Discrimination (Count II)*

Yanfeng argues that Marrero's age discrimination claim must fail because he fails to allege an adverse action. [DE 5 at 35]. Under the KCRA it is unlawful for an employer to "fail or refuse to hire, or to discharge an individual, or otherwise to discriminate against an individual . . . because of the individual's . . . age." KRS 344.040(1). A plaintiff may establish a prima facie case of age discrimination by showing that he: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person

7

outside the protected class." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) (citing *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). Under the fourth factor, the plaintiff must show that he was replaced by a "significantly younger person." *Id.*

Marrero alleges that he was over the age of 40. [DE 1-1 at 13]. Marrero also alleges that he was treated differently than similarly situated employees by being transferred to the second shift. [*Id.*]. The second factor Marrero must satisfy to prove his prima facie case includes adverse employment actions. *See Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914 (6th Cir. 2014). To determine whether a transfer constitutes an adverse employment action, the Court must evaluate "whether the 'conditions of the transfer' would have been 'objectively intolerable to a reasonable person.'" *Id.* at 921 (quoting *Strouss v. Michigan Dep't of Corr.,* 250 F.3d 336, 343 (6th Cir. 2001) (citation omitted)). Due to the recommendations from Marrero's doctors that he work the first shift [DE 1-1 at 8–9], there is at least an issue of fact about the reasonableness of Marrero's transfer. Marrero also alleges that he was qualified for his position because his performance was always considered satisfactory or above satisfactory. [DE 1-1 at 13]. Finally, Marrero contends that his replacement on the first shift "was much younger than he was." [*Id.*]. Drawing all reasonable inferences in Marrero's favor, the Court finds that Marrero has stated a claim for age discrimination under the KCRA. *See Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434. Accordingly, Yanfeng's Motion to Dismiss [DE 5] is **DENIED** as to Count II.

   *iii.* *Retaliation (Count IV)*

Yanfeng alleges that Marrero's retaliation claim must fail because taking FMLA leave and filing grievances with union officials are not protected activities under the KCRA. [DE 5 at 35]. Under the KCRA, it is unlawful to "retaliate . . . against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified,

8

assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." KRS 344.280(1). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in a protected activity, (2) the employer knew about the exercise of his rights, (3) he suffered an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

To satisfy the first element, Marrero alleges that he took FMLA leave and filed grievances with union representatives. [DE 1-1 at 15]. The anti-retaliation provision of the KCRA ensures that employers cannot retaliate against employees that "clearly challenge an employment practice that she believes to be unlawful." *Popeck v. Rawlings Co. LLC*, No. 3:16-CV-00138-GNS-DW, 2018 WL 2074198, at *14 (W.D. Ky. May 3, 2018) (citing *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015)). "Taking FMLA leave is not a protected activity for the purposes of the KCRA anti-retaliation provision." *Stanley v. Haier US Appliance Sols., Inc.*, No. 3:19-CV-00640-CRS, 2020 WL 718232, at *2 (W.D. Ky. Feb. 12, 2020). Therefore, Marrero cannot state a claim for retaliation under the KCRA related to his FMLA leave. *See id.* Similarly, filing grievances with a labor union is not protected under the KCRA. *See* KRS 344.040(1)(a) (listing protected statuses and activities as "race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking."). Neither taking FMLA leave or filing grievances with a union are protected activities under the KCRA. *See id.* Marrero cannot plausibly state a claim for retaliation under the KCRA. *See Southfield Educ. Ass'n*, 570 F. App'x at 487. Accordingly, Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count IV.

      *iv.*    *Wrongful Discharge (Count V)*

Yanfeng argues that Marrero's claim for wrongful discharge must fail because it is preempted by the KCRA. [DE 5 at 36]. Marrero contends that his claim is valid because it relies on the FMLA. [DE 13 at 91].

The Kentucky Supreme Court has established limitations to the wrongful discharge exception to the at-will employment doctrine:

> (1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law. (2) That policy must be evidenced by a constitutional or statutory provision. (3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky.1985). When a claim is premised on the same facts as a statutory claim that declares the act unlawful and provides a remedy, the wrongful discharge claim is preempted by the statutory remedy. *See McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843, 860 (E.D. Ky. 2015).

Although Marrero contends that his wrongful termination claim is based on the FLMA [DE 13 at 91], his Complaint states that the "well-defined public policy" is KRS 344.280. [DE 1-1 at 15]. When the KCRA creates the "the necessary underpinning" for a wrongful discharge suit, "[t]he statute not only creates the public policy but preempts the field of its application." *Grzyb*, 700 S.W.2d at 401. Even if Marrero's claim were premised on the FMLA, the FMLA similarly provides a statutory right of action and remedy. *See* 29 U.S.C. § 2617. Because Marrero's wrongful discharge claim is premised on the same facts as his KCRA and FMLA claims, his wrongful discharge claim cannot survive. *See McCartt*, 139 F. Supp. 3d at 860 (citing *Jones v. Kroger*, Inc., No. CivA.504–543–JMH, 2005 WL 2807194 (E.D. Ky. Oct. 27, 2005)). Marrero cannot plausibly state a claim wrongful termination. *See Southfield Educ. Ass'n*, 570 F. App'x at 487. Accordingly, Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count V.

      v.    *Constructive Discharge (Count VII)*

Yanfeng argues that Marrero's constructive discharge claim must be dismissed because it is not a stand-alone claim under Kentucky law. [DE 5 at 36]. In response, Marrero contends that he has established a prima facie case for constructive discharge. [DE 13 at 91].

This Court has held that "[c]onstructive discharge, even if shown, does not support an independent cause of action." *Sullivan v. Paycor, Inc.*, No. 3:13-CV-00028-H, 2013 WL 2286069, at *3 (W.D. Ky. May 23, 2013). Instead, a constructive discharge may constitute an adverse employment action, which can be an element of a claim under the KCRA. *See Brooks v. Lexington–Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004). Marrero cites *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) to support his assertion that constructive discharge is a stand-alone claim. [DE 13 at 91]. However, even in *Saroli*, constructive discharge is used to prove an employer took an adverse action related to an employee's sex discrimination claim. *See* 405 F.3d at 451. Because constructive discharge is not an independent claim under Kentucky law, Marrero cannot plausibly state a claim constructive discharge. *See Southfield Educ. Ass'n*, 570 F. App'x at 487. Accordingly, Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count VII.

**C. ADA Disability Discrimination Claim**

Yanfeng argues that Marrero failed to state a claim under the ADA (Count III) because he failed to exhaust administrative remedies. [DE 5 at 37]. In response, Marrero alleges that he has pleaded a plausible claim for ADA disability discrimination. [DE 13 at 92].

To begin, a plaintiff must first file a timely charge of discrimination with the equal Employment Opportunity Commission ("EEOC") before they can maintain an action for employment discrimination under the ADA. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d

11

299, 309 (6th Cir. 2000); *see also* 42 U.S.C. §§ 2000e-5(e)(1), 12117(a). Marrero cites *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998) for the proposition that he has pled the necessary elements to establish a prima facie employment discrimination claim. [DE 13 at 92]. Yet, in *Cassidy*, the Sixth Circuit noted that the plaintiff had pursued her legal remedies with the EEOC and had secured a right to sue letter. *See* 138 F.3d at 633. Marrero has not pled that he initiated an action with the EEOC or that he has received a right to sue letter. [DE 1-1]. Marrero cannot sue for employment discrimination under the ADA until he has exhausted his administrative remedies. *See Parry*, 236 F.3d at 309. Accordingly, Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** and Count III is dismissed without prejudice.

D. **FMLA Claim**

Yanfeng argues that Marrero's FMLA claim (Count VI) is barred by the statute of limitations. [DE 5 at 38–39]. Marrero does not address this argument.[1]

The statute of limitations for an FMLA claim is two years, unless the employer's violation was willful, in which case the statute of limitations is three years. *See* 29 U.S.C. § 2617(c)(1), (2). The statute of limitations starts running as of "the date of the last event constituting the alleged violation for which the action is brought." *See id.* Yanfeng contends that he was terminated on April 27, 2018. [DE 1-1 at 11]. Marrero initiated this action on September 20, 2021. [DE 5 at 39]. Even assuming Marrero's FMLA claim was subject to the three-year statute of limitations, his claim would still be time barred by approximately five months. Accordingly, Yanfeng's

---

[1] The Sixth Circuit has held that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)); *see also Smith v. Flinkfelt*, No. 13-02-GFVT, 2014 WL 1331182, at *5 (E.D. Ky. Mar. 31, 2014) ("[T]he case is strong for dismissing the uncontested arguments outright."). Although Marrero failed to respond Yanfeng's arguments and waived this issue, the Court nonetheless addresses the merits of Yanfeng's arguments on Marrero's FMLA claim.

Motion to Dismiss [DE 5] is **GRANTED** as to Count VI.

### IV.     CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Yanfeng's Motion to Dismiss [DE 5] is **DENIED** as to Count I;

2. Yanfeng's Motion to Dismiss [DE 5] is **DENIED** as to Count II;

3. Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count IV;

4. Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count V;

5. Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count VII;

6. Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** and Count III is dismissed without prejudice; and

7. Yanfeng's Motion to Dismiss [DE 5] is **GRANTED** as to Count VI.

Rebecca Grady Jennings, District Judge
United States District Court

September 20, 2022