UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

VICTOR MARRERO-PEREZ     Plaintiff

v.     Civil Action No. 3:21-cv-645-RGJ

YANFENG US AUTOMOTIVE INTERIOR SYSTEMS II LLC     Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Yanfeng US Automotive Interior Systems III, LLC ("Yanfeng") moves for summary judgment under Federal Rule of Civil Procedure 56 and requests attorneys' fees. [DE 49]. Plaintiff Victor Marrero-Perez ("Marrero-Perez") responded and Yanfeng replied. [DE 52; DE 53]. This matter is ripe. For the reasons below, the Court will **GRANT** Yanfeng's Motion for Summary Judgment [DE 49] and **DENY** Yanfeng's request for attorneys' fees.

### I. BACKGROUND

Hired on May 2, 2007, Marrero-Perez worked as an injection molding operator for Yanfeng. [DE 49-6 at 405]. Marrero-Perez initially worked first shift from 7 AM to 3 PM. [*Id.*]. His terms of employment were governed by the collective bargaining agreement ("CBA"). [DE 49-3; DE 52-5].

In 2015, Marrero-Perez was diagnosed with colon cancer and needed chemotherapy and surgery. [DE 49-5 at 396; *see also* DE 1-1]. Marrero-Perez applied for and received Family Medical Leave Act ("FMLA") time off, which entitled him to up to twelve weeks of unpaid, job-protected, leave per twelve-month period. [DE 49-3 at 372]. In addition to his cancer-related

FMLA leave, Marrero-Perez was also granted FMLA leave to care for his mother. [DE 49-5 at 398].

On March 27, 2017, Marrero-Perez was transferred to second shift, which required him to work from 3:30 PM to 11:30 PM as a molding operation. [DE 49-1 at 352]. Yanfeng claims that Marrero-Perez was given an option to work as a 5:00 AM – 1:30 PM first shift assembler or a 3:30 PM – 11:30 PM second shift molding operator. [DE 49-6 at 4015]. Yanfeng states that Marrero-Perez chose the second shift molding operator position. [*Id.*].

Marrero-Perez was told by his doctors that he should only work the first shift, and he informed Yanfeng of this. [DE 49-1 at 352]. But Yanfeng kept him on second shift. [*Id.*]. On April 12, 2017, Marrero-Perez filed a grievance report with his union, alleging that Yanfeng violated member seniority when they changed his shift. [DE 52-6 at 492].

While Marrero-Perez worked second shift, he often had to leave work early. [*Id.*]. Marrero-Perez claims he left work around 9:30 PM due to the pain and other complications stemming from his cancer treatments. [DE 49-12 at 415]. Thus, each time he left work early, his FMLA time was charged. [*Id.*].

On April 4, 2018, Yanfeng sent Marrero-Perez a letter informing him that he had no longer worked enough hours to qualify for FMLA and that he would now receive attendance points for attendance infractions, as outlined in its attendance policy. [DE 49-12 at 415]. Although the attendance policy itself is not in the record, the Referee Decision states that Yanfeng's attendance policy provides that employees who accrue twenty-one total points are subject to discharge. [DE 49-1 at 352, Referee Decision; *see also* DE 52-3 at 461]. In this same letter, Yanfeng mentioned that because Marrero-Perez continued to leave his shift at 9:30 PM, it offered to transfer Marrero-

Perez to a 1:00 PM to 9:30 PM Assembly position shift. [DE 49-12 at 415]. However, the letter states that Marrero-Perez declined this offer. [*Id.*].

In April 2018, Marrero-Perez left work early eleven times due to his pain, which resulted in Marrero-Perez accruing twenty-three total attendance points. [DE 49-1 at 353]. And accordingly, Marrero-Perez was terminated on April 27, 2018. [DE 49-15 at 422; DE 52-2 at 459]. Marrero-Perez's termination letter indicated that he was being terminated due to violation of the company attendance policy. [*Id.*].

After his termination, on May 6, 2018, Marrero-Perez filed a complaint with the Kentucky Office of Employment and Training for unemployment benefits. [DE 49-1 at 352]. The Office of Employment originally found that Marrero-Perez did not qualify for unemployment benefits, but on appeal, this decision was reversed. [*Id.*]. In the appeals decision, the Office of Employment found that "the evidence is sufficient to show that [Marrero-Perez's] attendance was unsatisfactory, but also sufficient to show [he] has good cause for the majority of attendance occurrences." [*Id.* at 353].

On May 8, 2018, Marrero-Perez filed a charge of discrimination ("charge") with the Kentucky Commission of Human Rights and EEOC. [DE 49-9 at 410; DE 52-1 at 457]. In the charge, Marrero-Perez asserted that "[s]ince on or about November 7, 2016, I have been subjected to different terms and conditions of my employment, [including] frequent changes of my workstation and my schedule. Management has also forced me to take FMLA days to care for my mother after my schedule was changed." [*Id*]. Marrero-Perez alleged that Yanfeng's discriminatory treatment was because he was Cuban. [*Id.*]. Two days later Marrero-Perez received his right to sue from the EEOC. [DE 49-11 at 414].

On September 20, 2021, Marrero-Perez filed a complaint in Jefferson Circuit Court, alleging seven causes of action. [DE 1]. Yanfeng removed this case to federal court under federal question and diversity jurisdiction. [DE 1-1]. Yanfeng then moved this Court, under Fed. R. Civ. P. 12(b)(6), to dismiss Marrero-Perez's claims. [DE 5]. Yanfeng argued in its Motion to Dismiss that: (1) Marrero-Perez's state law claims (Counts I, II, IV, V, and VII) were preempted by § 301 of the Labor Relations Management Act ("LMRA"), or, in the alternative, failed on the merits, (2) Marrero-Perez's Americans with Disabilities Act claim (Count III) failed to meet certain viability requirements, and (3) Marrero-Perez's FMLA claim (Count VI) was time-barred. [*Id.* at 32–38]. The Court dismissed all but two of Marrero-Perez's claims; however, this Court held that at the motion to dismiss stage, neither of Marrero-Perez's remaining claims were preempted by the LMRA. [DE 17].

Marrero-Perez's two remaining claims arise under the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040. Marrero-Perez's remaining claims allege that Yanfeng discriminated against him because it wrongfully discharged him due to his national origin and age. [DE 1-1]. Marrero-Perez asserts that he was replaced by a much younger female on first shift, who was not Cuban. [*Id.*]. Yanfeng now moves for summary judgment on these claims. [DE 49]. Yanfeng argues that summary judgment is proper because: (1) Marrero-Perez's KCRA claims are preempted by the LMRA, (2) workers' compensation exclusivity bars Marrero-Perez's claims, and (3) Marrero-Perez's national origin and age discrimination claim fail. [DE 49]. Yanfeng also asks this court to award limited attorneys' fees. [*Id.* at 349-50].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

4

party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

5

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III. DISCUSSION

#### A. LMRA Preemption

Because the record is fully developed, "Yanfeng renews its preemption argument[.]" [DE 49 at 335].[1] Yanfeng asserts that "the LMRA preempts Mr. Marrero-Perez's claims because those claims focus solely on the rights governed by the applicable CBA and require substantial analysis of that CBA, something that Mr. Marrero-Perez openly conceded in his deposition." [*Id.*]. Marrero-Perez responded, arguing that his claims are "not preempted by the LMRA" because "[n]o interpretation into the terms of the CBA is necessary to determine the outcome of Mr. Marrero's claims arising under the KCRA for (1) national origin discrimination and (2) age discrimination." [DE 52 at 445].

To determine whether preemption applies under § 301 of the LMRA, the Sixth Circuit applies the following test:

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the labor contract. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the labor contract, or instead by state law. If the rights were created by the labor contract, the claim is preempted. In short, if the state-law claim fails either of these two requirements, it is preempted by § 301.

*See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012) (brackets and citations omitted). Where the CBA would only provide "relevant background," preemption will not apply. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209–10 (6th Cir. 2004).

"[I]f LMRA preemption arises in a motion for summary judgment," and the plaintiff's claim is for wrongful discharge, the Court "must consider all aspects of the burden-shifting

---

[1] The Court has previously addressed Yanfeng's preemption argument in DE 17.

analysis that would be reached in resolving the merits of the claim." *See e.g.*, *Howard v. Cumberland River Coal Co.*, 838 F. Supp. 2d 577, 582 (E.D. Ky. 2011) (citing *Beckwith v. Diesel Tech., Co.*, 215 F.3d 1325 (6th Cir. 2000) (unpublished table decision))("holding, on appeal from summary judgment, that the LMRA preempted a wrongful discharge action in which the prima facie case would not require interpreting the CBA, but the employer's defense and the plaintiff's proof of pretext would require interpreting the CBA"); *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1334 (6th Cir. 1989)*; Slinker v. Jim Beam Brands Co.*, 689 F. App'x 406, 409 (6th Cir. 2017). In other words, the Court must see if, at any stage of *McDonnell Douglas*, the CBA must be interpreted to render a decision. *See id*.

Because Yanfeng renews its § 301 argument at the summary judgment stage, and Marrero-Perez's claims are for wrongful termination, the Court must analyze whether the merits, including each step of *McDonnell Douglas*, "require[s] interpreting the CBA." *Howard*, 838 F. Supp. 2d at 582. And "[b]ecause the language of the KCRA mirrors that of its federal counterpart, courts interpret the KCRA consistently with federal anti-discrimination law." *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 730 (W.D. Ky. 2013) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) and *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998)). Accordingly, the Court will analyze Marrero-Perez's KCRA discrimination claims under the *McDonnell Douglas* framework. *Id.*

(1) <u>McDonnell Douglas Analysis</u>

The *McDonnell Douglas* Framework is three-fold. At the first step of the *McDonnell Douglas* framework, the plaintiff must present evidence sufficient to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff meets his prima facie burden, the burden of production shifts to the employer to articulate a

7

legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 803. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). This framework applies to both Marrero-Perez's national origin and age discrimination KCRA claims. *See Brown*, 942 F. Supp. 2d at 730.

### (a) KCRA National Origin Discrimination Claim

The Kentucky Civil Rights Act ("KCRA") makes it unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . national origin." KRS 344.040(1)(a). It is also unlawful for an employer to "limit, segregate, or classify employees in any way which would deprive or tend to deprive an individual employment opportunity or otherwise adversely affect [his] status as an employee, because of the individual's national origin." *Id.* at KRS 344.040(1)(b).

    i.    Prima Facie Case

To establish a prima facie case for national origin discrimination, a plaintiff must show he: (1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which he was discharged, and (4) was replaced by a person outside the protected class or treated differently than a similarly situated individual. *See e.g.*, KRS 344.040(1)(a); *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 577 (Ky. 2016).

Neither party disputes that Marrero-Perez is Cuban or that he was terminated. However, Yanfeng argues that Marrero-Perez cannot meet the third and fourth element of national origin

8

discrimination, because Marrero-Perez is unqualified for the position due to his excessive absenteeism and he "cannot show any evidence regarding a replacement or the treatment of a similarly situated non-protected employee [ ]." [DE 49 at 340]. In response, Marrero-Perez argues that he is qualified because he "had no such history of absenteeism throughout his employment," until after his shift was "unilaterally changed"[2] to second shift, and that there is no existence of a point system that led to his termination. [DE 52 at 447]. Marrero-Perez also asserts that he established the fourth element of national origin discrimination because he was replaced by a person who "is outside the protected class of national origin and is a natural born United States Citizen." [*Id*. at 448].

To establish the fourth element of a prima facie case of national origin discrimination under the KCRA, Marrero-Perez must identify a similarly situated non-protected individual who was treated differently. *See* KRS 344.040(1)(a). "Employees are similarly situated when they are similar in all relevant respects." *Hattenbach v. Charles Kirchner & Son, Inc.*, No. 4:17-CV-00132-JHM, 2019 U.S. Dist. LEXIS 49911, at *11 (W.D. Ky. Mar. 26, 2019) (citations omitted). "[I]n determining whether two employees are similarly situated 'in all relevant respects,' the Court's task is to 'make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee.'" *Guyton v. Exact Software N. Am.*, No. 2:14-CV-502, 2016 WL 3927349, *10 (S.D. Ohio July 21, 2016) (quoting *Louzon v. Ford Motor Co.,* 718 F.3d 556, 564 (6th Cir. 2013)). It is appropriate for the Court to consider "[d]ifferences in job title, responsibilities, experience, and work record." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004); *see also Campbell v. Hamilton County*, 23 F. App'x 318, 325 (6th

---

[2] Marrero-Perez, under the same heading as his qualification argument, also claims that there is no point system and that the CBA reference a point system. He later identifies this as proof that Yanfeng's legitimate nondiscriminatory reason to terminate Marrero-Perez for his attendance, is pretextual.

9

Cir. 2001) (holding that differences in job title and responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated).

In this case, seniority is a relevant factor in analyzing whether Marrero-Perez established a similarly situated individual. *See, e.g.*, *Williams v. Widnall*, 173 F.3d 431 (Table) (6th Cir. 1999) (finding no error in the district court's conclusion that the employee who was not discharged was not similarly situated to the plaintiff because there was a difference in seniority); *Thompson v. OhioHealth Corp.*, No. 2:07-cv-110, 2008 U.S. Dist. LEXIS 100093, 2008 WL 5233468, at *8 (S.D. Ohio Dec. 11, 2008) (finding the plaintiff was not similarly situated because the plaintiff "had been employed by OhioHealth for approximately twenty one (21) years while plaintiff had been employed by OhioHealth for only approximately four months at the time of the termination of her employment"); *Zackery v. Auto Air Composites, Inc.*, No. 5:91-cv-35, 1993 U.S. Dist. LEXIS 4354, 1993 WL 146687, at *4 (W.D. Mich. Feb. 17, 1993) (determining a different race employee, who was not discharged, was not similarly situated to the plaintiff because there was a difference in seniority.). Thus, because seniority is a relevant factor in establishing a similarly situated individual, it must be determined whether the interpretation of the CBA is required to complete this analysis.

The record here reflects that seniority is explicitly governed by the CBA. [DE 49-3 at 368-69]. The CBA defines seniority and governs the role of seniority with shift transfers. [DE 52-5 at 476-8]. Therefore, to determine whether Marrero-Perez has met his burden and established a prima facie case of national origin discrimination, the Court would be required to interpret the CBA to determine whether (1) Marrero-Perez sufficiently identified a similarly situated person because, as admitted by Marrero-Perez, seniority is a relevant factor for this case, and (2) Yanfeng

discriminated against Marrero-Perez by moving him to second shift violated the CBA's seniority provision.

Marrero-Perez's deposition and other evidence supplied demonstrate the importance of interpreting the seniority provision of the CBA because Marrero-Perez relies on the difference in seniority status to show that Yanfeng discriminated against him when moving him to second shift. [DE 49-5 at 390-91, 393, 399]. "Mr. Marrero was 're-assigned' to the second shift. Ms. Halilovic, whom Mr. Marrero had more seniority than, was moved to first shift as part of a transfer request. Mr. Marrero was then moved a few weeks later from first shift to second shift." [DE 52 at 450]. And Marrero-Perez identifies the importance of interpreting the seniority provision in his claim of national origin discrimination in his complaint. [DE 1-1 at 11 ("Despite being forced to work the 2nd shift and asking to be placed back on the 1st shift, multiple employees were moved to the first shift with less seniority than Mr. Marrero. Again, this proves to show the discrimination utilized by Defendant against Mr. Marrero.")]. Marrero-Perez's briefing and complaint demonstrate that the crux of Marrero-Perez's national origin discrimination claim is whether an individual with less seniority than him was given preferential treatment. [DE 42 at 50]. Accordingly, interpretation of the CBA is required to analyze the first prong of *McDonnell Douglas*; therefore, Marrero-Perez's national origin discrimination claim under the KCRA is preempted.

      ii.    Pretext

Likewise, even if the first step of *McDonnell Douglas* did not require interpretation of the CBA, the third element of the *McDonnell Douglas* framework does. The Court in the third step must interpret the CBA to determine whether Marrero-Perez has met his burden to show by a preponderance of the evidence that Yanfeng's proffered reason is pretextual. "Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons

11

had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." R*omans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Here, Yanfeng's legitimate nondiscriminatory reason for terminating Marrero-Perez's is his "excessive absenteeism." [DE 49 at 341, 344]. Marrero-Perez asserts that Yanfeng's reason is pretextual because "there is no such existence of a point system that was used to justify termination [sic] of [him]" and "there is no mention of a point system that tracks points" within the CBA. [DE 52 at 447]. However, Marrero-Perez also argues that because the CBA is the controlling agreement, and since it lacks an attendance policy, there is no attendance policy, nor can there be an attendance policy. [DE 52 at 442]. In other words, he believes (1) there is not an agreement, and (2) even if there was, it is not included in the CBA and therefore does not apply. [*Id.*].

> The management rights provision of the CBA, in relevant part, states:
>
> The Company shall have the exclusive rights to manage, direct and supervise its plant and business, including all plant functions, operations, hours of work and schedules and methods of production; to define, change and modify work assignments and job classifications; to hire employees; to train employees; to lay off because of lack of work or other conditions; to suspend employees; to discipline and discharge employees for just cause, including attendance; to establish, implement and maintain a drug testing policy, including testing of employees in the event of behavior indicating drug use and/or testing in the event of accidents.

[DE 49-3 at 359]. Neither party disputes that this provision is included in the CBA. However, the parties dispute whether the CBA's lack of an explicit attendance policy means that Yanfeng cannot enforce an attendance policy against Marrero-Perez. [DE 52 at 442]. Thus, the CBA must be interpreted to analyze Marrero-Perez's pretext argument. As Marrero-Perez points to the CBA's lack of attendance policy to show there is not an attendance policy, then the CBA must be interpreted to (1) determine whether Yanfeng can even have an attendance policy, (2) if so,

12

whether Yanfeng's attendance policy is in line with the CBA, and (3) whether Yanfeng was in its rights to terminate Marrero-Perez for his attendance issues. Therefore, resolution of Marrero-Perez's pretext argument would require the Court to interpret the CBA to render a decision.

Accordingly, because the *McDonnell Douglas* framework, in this case, would require the Court to interpret the CBA to rule on Marrero-Perez's national origin discrimination claim under the KCRA, Marrero-Perez's national origin discrimination claim under the KCRA is preempted by the LMRA. *See Howard*, 838 F. Supp. 2d at 582.

*(b) KCRA Age Discrimination Claim*

Under the KCRA it is unlawful for an employer to "fail or refuse to hire, or to discharge an individual, or otherwise to discriminate against an individual . . . because of the individual's . . . age." KRS 344.040(1). A plaintiff may establish a prima facie case of age discrimination by showing that he: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) (citing *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). Under the fourth factor, the plaintiff must show that he was replaced by a similarly situated "significantly younger person." *Id.*; *see also* KRS 344.040(1)(a).

However, for the same reasons that Marrero-Perez's national origin discrimination claim under the KCRA is preempted by the LMRA, so is his KCRA age discrimination claim. Yanfeng argues, again, that Marrero-Perez is "disqualified" and cannot identify a similarly situated individual, and therefore has not established his prima facie case. [DE 49 at 343]. Thus, for the same reasons, as discussed above, the Court is required to interpret the CBA to determine whether Marrero-Perez established a prima facie case of age discrimination. Likewise, Yanfeng's

13

nondiscriminatory reason proffered, and Marrero-Perez's pretext argument remain the same for the age discrimination claim. [DE 52 at 449]. Marrero-Perez states that he "incorporates his previous argument and discussion about Mr. Marrero's absenteeism from the national origin claim discussed above . . ." [*Id.*]. Therefore, as for Marrero-Perez's national origin discrimination claim, the court would be required to interpret the CBA regarding its position on Yanfeng's attendance policy. Accordingly, for the same reason that Marrero-Perez's national origin discrimination claim is preempted, hi age discrimination KCRA claim is also preempted by the LMRA.

Generally, Marrero-Perez also argues that his KRCA claims are not preempted because "[t]he CBA does not govern state law discrimination suits, nor does the CBA identifying [sic] procedures that Defendant used to discriminate against Mr. Marrero." [DE 52 at 445]. But as discussed above, state law claims can be preempted by § 301 in certain circumstances. *See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012). And besides these conclusory statements, Marrero-Perez does not point to any evidence in the record or supply any case law to the court to support his proposition. Therefore, this argument fails, as well.

        (2) <u>LMRA Analysis</u>

Because Marrero-Perez's claims are preempted, they must now be construed as if they were originally brought under the LMRA. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 364 n.7 (6th Cir. 2008) ("[I]n cases of LMRA preemption, the court must 'recharacterize' the state cause of action as a federal claim and analyze the claim under federal law.") (citation omitted). However, the LMRA statute of limitations also applies. *See Howard*, 838 F. Supp. 2d at 585. The LMRA provides for a six-month statute of limitations period. *McCreedy v. Loc. Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)). The six-month period begins to run "when an employee discovers or should have

14

discovered with [the] exercise of due diligence, acts giving rise to the cause of action." *Saunders v. Ford Motor Co.*, 879 F.3d 742, 751 (6th Cir. 2018).

Here, Marrero-Perez was terminated on April 27, 2018. [DE 49-15 at 422]. As evidenced by the record, his termination is the last act that could have given rise to this cause of action. *See Saunders*, 879 F.3d at 751. Thus, Marrero-Perez had only six months after his alleged wrongful termination due to his attendance, to file his LMRA claim. However, Marrero-Perez did not file this lawsuit until September 20, 2021, which is close to forty-one months later. [DE 1-1]. Accordingly, because Marrero-Perez's remaining claims arise from his termination, his claims are time-barred and must be dismissed.

## B. Yanfeng's Request for Attorneys' Fees

Yanfeng moves for an award of attorneys' fees under 28 U.S. § 1927 "or the Court's inherent authority to curb abuse." [DE 49 at 349]. 28 U.S. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. An award of sanctions under §1927 is highly discretionary. *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996). And § 1927 sanctions serve the purpose of "deter[ing] dilatory litigation practices and [] punish[ing] aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). A finding of bad faith is not required to impose sanction under § 1927 and the standard is objective. *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006). But inadvertence or negligence do not meet the objective standard under § 1927. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). Counsel's conduct must "fall[] short of the

15

obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* "[T]he court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citation omitted). "An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). "Punishment under the statute is sparingly applied[.]" *Shields v. Nat'l Automatic Sprinkler Indus. Welfare Fund*, No. 3:08-CV-0285-H, 2009 WL 3231380, at *2 (W.D. Ky. Sept. 30, 2009); *Pierzynowski v. Police Dep't City of Detroit*, 947 F. Supp. 1147, 1151 (E.D. Mich. 1996) (both citing *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994)).

Yanfeng contends that Marrero-Perez caused it "to bear considerable unnecessary expenses to brief plainly flawed claims thoroughly[.]" [DE 49 at 349]. Yet, Yanfeng does not point to anything other than Marrero-Perez's pursuit of meritless claims to support its request for attorneys' fees. *See Metz*, 655 F.3d at 489. The extent of Yanfeng's argument is that "Yanfeng should not have had to bear fees associated with Mr. Marrero-Perez's National Origin and Age discrimination claims where those claims are clearly preempted under the LMRA and clearly fail as a matter of law." [DE 49 at 350]. But this belief is not as clear as Yanfeng suggests. This argument failed at the motion to dismiss stage and was not implicated in the summary judgment analysis until the Court reached the issue of whether Yanfeng's reason for termination was pretextual. The only evidence that Yanfeng proffers is a letter that it sent to Marrero-Perez, which summarily states that the evidence favors its theory of the case, and he should therefore drop the claim. [DE 49-19 at 430-31]. The fact that Marrero-Perez did not dismiss these claims based on Yanfeng's letter, does not multiply the proceedings unreasonably and vexatiously. *See Rentz v. Dynasty Apparel Indus.*,

16

*Inc.*, 556 F.3d 389, 396 (6th Cir. 2009) (citation omitted). And although a finding of bad faith is not required to impose § 1927 sanctions, Yanfeng fails to show that Marrero-Perez's conduct goes beyond inadvertence or negligence. *See Ridder*, 109 F.3d at 298. As punishment under § 1927 should be sparingly applied, and an award of attorneys' fees must be limited to truly egregious cases of misconduct, which is not apparent here; Yanfeng's request for attorneys' fees is **DENIED**.

## CONCLUSION

For the reasons explained, and the Court being otherwise sufficiently advised, **IT IS SO ORDERED:**

(1) Yanfeng's Motion for Summary Judgment is **GRANTED** [DE 49].

(2) Yanfeng's request for attorneys' fees is **DENIED** [DE 49].

(2) Accordingly, the Court will enter a separate judgment.